**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:26-cv-00291**

JILL COSHLAND,

Plaintiff,

v.

BRETT BOLTON,

Defendant.

**DECLARATION OF BRETT BOLTON**

I, Brett Bolton, hereby declare as follows:

1. I am the Defendant in this action.

2. I am a citizen of the state of Florida.

3. My current address is 2855 NE 26th Place, Fort Lauderdale, Florida

4. I have resided at this address since 2021.

5. I have been a full-time citizen and resident of the State of Florida since 1994.

6. I have never traveled to North Carolina or transacted any business in North Carolina.

7. And I have been a resident of Florida for the past 32 years.

8. I've never once been in the state of North Carolina, not even to visit one time.

9. My business is based in Fort Lauderdale, Florida.

10. Some of the marketing materials for my business that are posted online identify a given area or city, but those designations are merely for marketing and the only office I have for my business is in Fort Lauderdale, Florida.

11. Anyone calling my office will speak with someone at my Florida office, and any patients I see in my practice will be seen and treated in Florida.

12. Any YouTube video or similar for of social media reciting "Natural Hair Transplant Clinic in Asheville, North Carolina – Dr. Brett Bolton" is merely designed to invite clients from all over the country, and I have no offices and conduct no business in Asheville, North Carolina. Many of my patients come from states other than Florida.

13. I have no office or staff in North Carolina, and I do not provide services within North Carolina.

14. I met Felix Sabates in Florida in 2022.

15. I subsequently met the Plaintiff, Jill Coshland, in Florida.

16. I never met with or socialized with Jill Coshland or Felix Sabates in North Carolina.

17. I have never been to North Carolina, and I do not transact business in North Carolina and I own no property in North Carolina.

18. In and around early 2023, I was aware that my partner, Dragana Dujovic, had discussions with Felix Sabates and Jill Coshland regarding the possibility of their forming a business to engage the production and sale of fashion items.

19. I was never involved in this prospective business, and I did not know any details of this prospective business.

20. I was not aware that this business had any significant connections with North Carolina, other than that Felix Sabates had some connection with North Carolina and Felix Sabates was to be a partner in this prospective business.

21. On May 5, 2023, I placed a phone call to Felix Sabates, and over the next two days I exchanged text messages with Felix Sabates.

22. At the time of that phone call and those text messages, I was in Fort Lauderdale, Florida.

23. At the time of that call and those text messages, I did not know the whereabouts of Mr. Sabates, and I was not aware that he was in North Carolina.

24. At the time of this call and these text messages, I did not know whether Jill Coshland was in North Carolina nor whether she was in the presence of Mr. Sabates.

25. In making said call and sending said messages, I did not intend to cause harm to Ms. Coshland or to Mr. Sabates; I was concerned that Felix Sabates was having an affair with my partner and the mother of my children, Dragana Dujovic, and I wanted any such illicit relationship to cease, and I was very angry and upset when I sent those messages.

26. The purpose of said phone call and messages, and the purpose of my request that Ms. Dujovic not communicate with Mr. Sabates, was to protect my relationship with Ms. Dujovic; these actions were not taken to harm any purported business.

27. In making said call and sending said messages, I was not directing my conduct toward North Carolina; rather, I made that call and sent those messages irrespective of the physical location of Mr. Sabates.

28. On August 24, 2023, Felix Sabates filed a Complaint against me in the Circuit Court in Broward County, Florida (case no. CACE-23-017480). A true and accurate copy of this Complaint is attached as Exhibit I.

29. In said Complaint, Sabates admitted that he resides in Miami-Dade County, Florida.

30. In said Complaint, Sabates admitted that he met Dujovic and me in Florida.

31. In said Complaint, Sabates asserted a claim for Tortious Interference of Business Opportunity, which is the exact claim for damage to the business that the Plaintiff, Dujovic and Sabates were allegedly forming.

32. On April 1, 2024, Dragana Dujovic filed a Verified Complaint against me in the Circuit Court in Broward County, Florida (case no. CACE24004447). A true and accurate copy of this Verified Complaint is attached as Exhibit II.

33. In said Verified Complaint, Dragana Dujovic asserted a claim for Tortious Interference of Business Relationship," which is the exact claim for damage to the business that the Plaintiff, Dujovic and Sabates were allegedly forming.

34. Attached as Exhibit III is a true and accurate copy of excerpts from the deposition of Felix Sabates (August 22, 2023).

35. Attached as Exhibit IV is a true and accurate copy of excerpts from of the deposition of Felix Sabates (June 12, 2024).

36. Attached as Exhibit V is a true and accurate copy of excerpts from of the deposition of Jill Coshland (January 15, 2026).

37. Attached as Exhibit VI is a true and accurate copy of excerpts from of the deposition of Dragana Dujovic (December 11, 2023).

38. Dujovic is a resident of Broward County, Florida.

39. Pursuant to 28 U.S.C. § 1746 (2006), I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted, this the 21 day of June, 2026.

Brett Bolton

# EXHIBIT I

## Florida Complaint by Sabates

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.:

FELIX SABATES

Plaintiff,

v.

BRETT BOLTON,

Defendant.
______________________/

## COMPLAINT

Plaintiff, FELIX SABATES ("Sabates" or "Plaintiff") hereby brings this action against Defendant, BRETT BOLTON ("Bolton" or the "Defendant"), and alleges as follows:

## INTRODUCTION

1. This is an action for defamation per se against Bolton based upon defamatory statements made and published to third parties in both oral communications and written communications without any privilege to do so about the Plaintiff's reputation and having an affair with Bolton's wife.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this dispute because this complaint seeks damages in excess of $50,000.00, exclusive of interest and attorneys' fees.

3. Felix Sabates is over the age of eighteen (18) and resides in Miami-Dade County, Florida, and is otherwise *sui juris*.

4. Brett Bolton, is over the age of eighteen (18), resides in Broward County, Florida, and is otherwise *sui juris*.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

5. The acts and omissions described herein and giving rise to this lawsuit accrued in Broward County, Florida. Accordingly, this Court has personal jurisdiction over the Defendants and has subject matter jurisdiction over the claims asserted herein, and venue is proper in Broward County, Florida.

6. All conditions precedent to the filing of this action have been satisfied, waived, excused, or performance would be futile.

## GENERAL ALLEGATIONS

7. Sabates is a businessman with a long track record of successful ventures and charitable causes. Sabates has a stellar reputation and charter in business as well as in the communities that he has lived in.

8. By way of example, Sabates was the CEO and majority owner of the TSC Group which represented companies such as Atari, Nintendo, Cannon Copiers, Emerson Electronics and Compaq Computers. TSC was sold. Sabates was the owner of Trinity Yachts – the largest Yacht manufacturer in America. This company has been sold.

9. Sabates was the owner of Sabates Automotive Group – Chain of car dealerships in the southeast with sales over $600 million annually. This company has been sold.

10. Sabates was a NASCAR/IMSA team owner for 35 years with over 100 wins. The teams have been sold.

11. Sabates is the majority owner of Charlotte Checkers Hockey Team (Won AHL championship.

12. Sabates is a minority owner of NBA team Charlotte Hornets 35 years. Michael Jordan majority partner.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

SCHLESINGER LAW GROUP

1200 BRICKELL AVENUE · SUITE 1270 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

13. Sabates has an Honorary doctorate degree from the University of NC Charlotte, an Honorary doctorate degree from Elon University and an Honorary doctorate degree from Belmont Abbey College.

14. Sabates is a Board Member of Atrium Healthcare System, the 3rd largest not for profit hospital chain in the country and a Board Member Black & Decker/ Applica for 25 years.

15. Sabates is the founding member of Boys & Girls Club Dream Makers Society in Broward County, FL. Sabates is a major benefactor for the Atrium/Sanger Clinic Heart Institute, Imaging Center named for Felix Sabates. Sabates is a founding Board Member for Wells Fargo Golf Championship, a Member of the North Carolina State banking commission, and Vice Chair of the Charlotte Douglas International Airport Authority.

*i. Bolton.*

16. Bolton is a State of Florida licensed Doctor of Osteopathic Medicine. Pursuant to the Florida Department of Health Medical Quality Assurance Search Services website, Dr. Bolton obtained his osteopathic medical degree in 1996 from "UOMHS." Thereafter, Dr. Bolton completed a one-year general internship at Palmetto General Hospital in Hialeah, Florida.

17. At one point, Dr. Bolton was licensed to practice osteopathic medicine in Ohio, Florida, Tennessee, New York, Michigan, and Oregon. However, as of the date of the instant complaint, Dr. Bolton can only practice medicine in Florida. According to State records, it seems that Dr. Bolton's license to practice medicine in Oregon and Michigan has expired.3 Additionally, and most significantly, Dr. Bolton's license to practice medicine in Ohio has been permanently revoked4, his license in Tennessee has been [and continues to be] suspended, and the status of his New York license reads as follows:

> Non-disciplinary Order of Conditions pursuant to New York State Public Health Law Section 230. The physician is precluded from any registration in New York

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

and/or practice of medicine, clinical or otherwise. The physician is precluded from diagnosing, treating, operation, or prescription for any human disease, pain, injury, deformity, or physician condition on New York on in any state setting or jurisdiction where his practice is predicated upon his New York State medical license, absent modification of this order by the Board.

18. Bolton is a hair transplant specialist and a doctor.

19. Bolton after pleading guilty was convicted in the United States District Court, Southern District of Florida, Miami Division for nineteen (19) felony counts of misapplying money and funds – each of a value in excess of $1,000 – belonging to a gaming establishment operated by an Indian tribe, in violation of 18 U.S.C. Section 1167(b).

20. According to the Tennessee Board of Osteopathic Medicine records, Bolton's parents encouraged him to seek psychiatric help due to his erratic behavior. Bolton was seen by Dr. Joseph Sharpe in Nashville Tennessee. Dr. Sharpe stated that Bolton claimed he was Jesus Christ and that he received special messages from God. Bolton got angry and defensive and stormed out of his appointment. Dr. Sharpe recommended Bolton enter a hospital in Tennessee for stabilization and further evaluation. Bolton refused. Dr. Sharpe started in his report, "if [Dr. Bolton's] condition deteriorates, he will meet civil commitment criteria."

21. Bolton was also taken by the New York City Police Department to a psychiatric hospital for evaluation in mid-September 2014, after striking an individual in a bathroom by the 9-11 Memorial. At the psychiatric hospital, Dr. Bolton tried to strike a doctor resulting in his being given medication and forcibly restrained.

22. At the hospital, Bolton explained to the doctors that he is Jesus Christ, the Son of God and that God told him to leave evidence of his existence. Bolton further explained that he went to the 9/11 Memorial and that God spoke to him and told him the man in the bathroom was

SCHLESINGER LAW GROUP
1200 BRICKELL AVENUE · SUITE 1270 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

a pedophile that he needed to assault, which he did. When contacted by the psychiatric hospital in New York, Bolton's father told them, "[Dr. Bolton] is psychotic and refusing to get treatment."

23. Other strange events occurred after Bolton's release, which led to the Tennessee Board of Osteopathic Examination to determine that Bolton to be bipolar, acutely manic, psychotic, delusional and a threat to others.

24. Bolton has been exhibiting the same type of manic and impulsive behavior in his actions with regard to Sabates.

25. Sabates met Bolton at a Boys & Girls Club event at Fischer Island, Florida.

*ii. Dragana Dujoviv ("Dragana")*

26. Dragana is the mother of three children and Bolton is the father.

27. Sabates met Dragana approximately in 2015 at a at a Boys & Girls Club event at Fischer Island, Florida. At the time, Dragana was dating a friend of Sabates.

28. Sometime in 2022, Sabates decided to go into business with Dragana who had at that time a business manufacturing purses, belts and scarves. Sabates has assisted Dragana in selling these products by introducing her to his friends and family members.

29. At this time, Dragana had a relationship with Bolton who was fully aware of the business relationship Dragana and Sabates had with regard to her products.

30. At a November 4, 2022, charity event, Dragana and Sabates decided to start a separate company for Sabates then fiancé Jill Coshland to be Dragana's partner and Sabates to be the financial backer.

31. At this time, Sabates asked Bolton if he wanted to be a partner and invest in the new venture, and he responded that "he was not ready yet to commit."

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

32. Sometime in February 2023, Dragana came to Charlotte to meet with Sabates' accounting firm Forvis, specifically with Liz Murphy, a senior partner, to set up this new company. The name was going to be "Fashions by Dragana".

33. Sabates then met with his business attorney to set up a NC or Florida company. In furtherance of this new venture, Abates asked Dragana to buy some samples and do photo shoots so Sabates could present her products to some of his connections in the retail business such as Family Dollar Store, Dollar General and Cato Corporation.

34. Sabates was beginning to make some progress then on April 1, 2023, Sabates took Dragana and others to dinner at ZZ's in Miami, Florida. Bolton also attended this dinner.

35. Bolton was drinking double tequilas from the time he got to the bar and kept getting up as many as 8 times from the dinner table to go to the bathroom. Sabates witnessed Bolton being so high he could not even use a fork to put food in his mouth. The last time Bolton came back from bathroom there was a white substance on his nose and Sabates gave him a napkin and told him to wipe it off. Sabates told Dragana then that there was something wrong with him and she responded that Bolton "did cocaine".

*iii. The Defamatory Acts and Intentional Interference By Bolton.*

36. At some point in mid-2023, Bolton started to believe that Sabates was having an affair with Dragana.

37. Sabates only had a friendship and business relationship with Dragana, which Bolton knew.

38. On May 5, 2023, Sabates received a phone call at approximately 9 p.m. from Draganas phone. Sabates thought it was strange that she was calling at that time of day. Sabates answered the phone, and it was Bolton on the phone and the first words out of his mouth to Sabates

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

was "were you are paying Dragana to be your whore and you are fucking her". Bolton then proceeded to tell Sabates that he "was going to whip the shit out of him and then in the same breath said he was going to" kill" Sabates.

39. Over the next 2 days, Bolton sent Sabates over 100 texts containing vile and defamatory statements.

40. Plaintiff has come to learn that Bolton has published the following defamatory statements to third parties at or near the time of the text messages and continuing to now:

a. Sabates was having an affair with Dragana and paying her to have sex with him.

b. Sabates was paying "whores" for sex.

c. Sabates had a venereal disease, herpes and had given Dragana herpes.

d. Sabates participated in group anal sex with twelve men.

41. All of these statements are false and defamatory per se.

42. The false and defamatory statements by Bolton as well as intentional acts of threatening phone calls and texts interfered with the business opportunity with Dragana causing Sabates to lose the funds invested and for the venture to be terminated.

43. As a result of Defendant's statements, Plaintiff was forced to retain counsel and to bring this action.

**<u>COUNT I – DEFAMATION-SLANDER PER SE</u>**

44. Plaintiff realleges and restates the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45. As stated above, Bolton has published numerous false statements impugning the character, morality, chaste and reputation of Plaintiff to third parties.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

SCHLESINGER LAW GROUP

1200 BRICKELL AVENUE · SUITE 1270 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

46. These statements that were published to third parties, include but are not limited to, the following:

a. Sabates was having an affair with Dragana and paying her to have sex with him.

b. Sabates was paying "whores" for sex.

c. Sabates had a venereal disease, herpes and had given Dragana herpes.

d. Sabates participated in group anal sex with twelve men.

47. These statement are false and defamatory.

48. Bolton knowingly made these statements to third persons with the intention of harming Plaintiff's personal reputation and character.

49. Bolton's statements concerning Plaintiffs are false and made with reckless disregard of the truth or falsity and/or with malice.

50. Bolton's comments directed at Plaintiff sought to embarrass and humiliate Plaintiff among his family, friends, peers and colleagues.

51. Bolton's statements were libelous per se because it attacked Plaintiff's moral turpitude, character and reputation and claim that Bolton has a venereal disease, having immoral and illicit sexual acts and committing a crime of paying prostitutes.

52. Plaintiff has been damaged by the statements because the statements subjects Plaintiff to hatred, embarrassment, distrust, ridicule, contempt, and disgrace.

53. Bolton's false and defamatory statements about Plaintiff is damaging his personal, his reputation and character.

54. The statements will forever falsely taint and permanently damage Plaintiff's reputation, character amongst his family, friends, peers, colleagues and business community.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

SCHLESINGER LAW GROUP

1200 BRICKELL AVENUE · SUITE 1270 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

55. As the identified speaker and publisher of these defamatory and false statement, Bolton is liable for the effects of the defamatory statements.

56. Bolton's statements painted Plaintiff in a negative false light and this defamatory conduct is not entitled to any privilege that would bar Plaintiff's action for defamation/slander per se.

57. Plaintiff has a stellar reputation in the business and charitable community, and Bolton's false and defamatory statements have harmed and damaged same.

58. As a direct and proximate result of Bolton's actions and the falsity of information published, Plaintiff has suffered substantial damages, and seeks compensatory damages to its reputation and other and further damages that are allowable under the law.

**WHEREFORE**, Plaintiff demands judgment against Brett Bolton as follows:

i. for compensatory damages including consequential and incidental damages as a result of Bolton's wrongdoing in an amount to be determined at trial.

ii. Awarding Plaintiffs attorney's fees and costs, and

iii. Such further relief that this Court deems just and proper.

**COUNT II – TORTIOUS INTERFERENCE OF BUSINESS OPPORTUNITY**

59. Plaintiff realleges and restates the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

60. Plaintiff and Dragana were in the process of forming a company and entering into a new business.

61. Plaintiff expended funds to start the business including paying for samples and other expenses like start-up costs, legal and accounting fees amounting to over $100,000.00.

62. But for the Defendant' intentional and unjustifiable interference with Plaintiff's prospective business opportunity, Plaintiff business would be completed and running.

SCHLESINGER LAW GROUP

1200 BRICKELL AVENUE · SUITE 1270 · MIAMI, FLORIDA 33131 · TELEPHONE 305.373.8993 · FAX 305.373.8098

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

63. As a result, Plaintiff has been damaged as the opportunity has been destroyed.

64. As a direct and proximate result of Defendant's intentional, wrongful, malicious and unjustified interference with Plaintiff's business opportunity, Plaintiff has suffered substantial damages, and seeks compensatory damages and other and further damages that are allowable under the law.

**WHEREFORE**, Plaintiff demands judgment against Brett Bolton as follows:

iv. for compensatory damages including consequential and incidental damages as a result of Bolton's wrongdoing in an amount to be determined at trial.

v. Awarding Plaintiffs attorney's fees and costs, and

vi. Such further relief that this Court deems just and proper.

**RESERVATION FOR PUNITIVES DAMAGES**

Plaintiff reserves the right to amend the complaint to seek punitive damages against the Defendant.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 24, 2023.

Respectfully submitted,

**SCHLESINGER LAW GROUP**
*Counsel for Plaintiff*
1200 Brickell Avenue, Suite 1270
Miami, FL 33131
Phone: (305) 373-8993
Facsimile: (305) 373-8098
E-mail: mjs@mjsjd.com
E-mail: eservice@mjsjd.com

By: *_/s/ Michael J. Schlesinger_*
MICHAEL J. SCHLESINGER
Florida Bar No. 141852

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# EXHIBIT II

# Florida Complaint by Dujovic

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

Case No.:

DRAGANA DUJOVIC, individually,

Plaintiff,

v.

BRETT BOLTON, individually,

Defendant,
_________________________________/

**VERIFIED COMPLAINT**

The Plaintiff, DRAGANA DUJOVIC ("Plaintiff, Dujovic"), by and through its undersigned counsel, pursuant to the Florida Rules of Civil Procedure, hereby sues the Defendant, BRETT BOLTON ("Defendant, Bolton"), for damages and replevin of certain personal property, as follows:

1. This is an action for damages, in excess of $50,000.00, exclusive of attorneys' fees, costs and interest, and for replevin and equitable relief.

2. This Honorable Court has jurisdiction over the parties and the subject matter hereto.

3. The Plaintiff, Dujovic, is a *sui juris* individual over the age of eighteen (18) years who is a resident of Broward County, Florida.

4. The Defendant, Bolton, is a sui juris individual over the age of eighteen (18) years who is a resident of Broward County, Florida.

5. Venue is proper in Broward County as that is the location where the causes of action accrued and is where the Defendant, Bolton, resides.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

6. The Plaintiff, Dujovic, and the Defendant, Bolton, resided together for approximately eight (8) years and have three (3) minor children born of their relationship.

7. The Defendant, Bolton, is a licensed doctor of osteopathic medicine in Florida, but lost his license to practice osteopathic medicine in Ohio, Tennessee, New York, Michigan, and Oregon.

8. The Plaintiff, Dujovic, met Felix Sabates ("Sabates") in approximately 2015 at a charitable event at Fisher Island in Miami Dade-County, Florida.

9. The Plaintiff, Dujovic, and Sabates decided to go into a fashion business together in or around November of 2022 (the "Business"). In particular, the Business involved, among other things, the manufacturing of purses, belts, and scarves.

10. The Defendant, Bolton, was fully aware of the Business, but was not a party to, an owner, shareholder, member of, or otherwise a participant in, the Business.

11. Sabates was to provide the capital and his vast contacts to the Business, and his then-fiancé, Jill Coshland ("Jill"), and the Plaintiff, Dujovic, would handle the day-to-day management of the Business. Sabates would participate in the day-to-day management of the Business only on an as-needed basis.

12. The Plaintiff, Dujovic, Sabates, and Jill decided that the Business would be called "Fashions by Dragana".

13. Sabates provided significant time, effort and capital to the Business in an effort to get the Business up and running.

14. As of April 2023, the Plaintiff, Dujovic, had developed the concept for the Business and began creating the product line with matching accessories, prints, handbags, and footwear, all with the assistance, support and guidance of Sabates and Jill.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

15. During this time, the Defendant, Bolton was aware of the Business, including its concept, designs, and the progress it was making. The Defendant, Bolton, stated he had no desire to be involved and/or invest in the Business.

16. Months later, the Defendant, Bolton, unfortunately formed the unfounded and erroneous belief that the Plaintiff, Dujovic, was having an affair with Sabates, and the Defendant, Bolton, engaged in a campaign of harassment and threatening behavior toward the Plaintiff, Dujovic, and Sabates, in whole or in part to destroy the business relationship between the Plaintiff, Dujovic, and Sabates, and ultimately the Business.

17. The Defendant, Bolton's behavior toward the Plaintiff, Dujovic, and Sabates became erratic, threatening and wildly inappropriate.

18. In particular, the Defendant, Bolton, threatened Sabates and the Plaintiff, Dujovic, in person, via text messages, and over the telephone.

19. The Plaintiff, Dujovic, even witnessed and overheard a telephone call made by the Defendant, Bolton, wherein he threatened to physically harm Sabates if he had further contact with the Plaintiff, Dujovic, or any involvement with the Business.

20. On or about May 5, 2023, the Defendant, Bolton, sent Sabates hundreds of text messages containing, among other things, defamatory statements regarding the Plaintiff, Dujovic.

21. These defamatory statements, include, but are not necessarily limited to: (a) the Plaintiff, Dujovic, having an affair with Sabates and being paid to have intercourse with him; (b) the Plaintiff, Dujovic, had a sexually transmitted disease; and (c) the Plaintiff, Dujovic, was (or is) a "whore."

22. The Defendant, Bolton, made these false and defamatory statements with full knowledge of their falsity and with malicious intent to cause harm to the Plaintiff, Dujovic.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

23. In addition to publishing defamatory statements about the Plaintiff, Dujovic, the Defendant, Bolton, forced the Plaintiff, Dujovic, out of fear for her and Sabates' safety, to block Sabates and Jill from her cellphone, thereby interfering with the Business.

24. The Defendant, Bolton, even went so far as taking all the inventory the Plaintiff, Dujovic, had from the Business and removing the Plaintiff, Dujovic, and their three (3) minor children from their residence located at 2855 North East 26th Place, Fort Lauderdale, Florida (the "Property"), resulting in the inability for the Business to even operate.

25. The Defendant, Bolton's, forceful removal of the Plaintiff, Dujovic, from the Property resulted in the Plaintiff, Dujovic's, personal property, including but not limited to clothing, computers, electronics, and jewelry being left in the Property without the Plaintiff, Dujovic's, ability to retrieve same.

26. The Plaintiff, Dujovic, has demanded the return of her personal property on numerous occasions, verbally and in writing, to the Defendant, Bolton. A true and correct copy of the Plaintiff, Dujovic's, written demand is attached hereto as Exhibit "A".

27. The Defendant, Bolton, is wrongfully in possession of the Plaintiff, Dujovic's, personal property, most of which is more particularly described on the list attached hereto Exhibit "B" (the "Personal Property").

28. The false and defamatory statements by the Defendant, Bolton, as well as intentional acts of threatening telephone calls and texts, along with the forceful removal of the Plaintiff, Dujovic, from the Property and the wrongful possession and control of the Personal Property, has interfered with the Plaintiff, Dujovic's business relationship with Sabates (i.e., the Business), causing Sabates to refuse to fund the Business any further and cause the Business to terminate.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

29. The Plaintiff, Dujovic, has retained the undersigned counsel and has become obligated to pay the undersigned counsel's reasonable attorneys' fees and costs.

30. All conditions precedent to the commencement of this action have been met or otherwise waived.

***COUNT I – DEFAMATION PER SE***

31. The Plaintiff, Dujovic, hereby realleges, restates, reasserts and incorporates the allegations contained in paragraphs one (1) through thirty (30) above as if set forth at length herein.

32. The Defendant, Bolton, has published numerous false and defamatory statements to third parties impugning the character, morality, chaste and reputation of the Plaintiff, Dujovic.

33. These statements are and were false and defamatory.

34. The Defendant, Bolton, knowingly made these statements to third parties with the intention of harming the Plaintiff, Dujovic's personal and business reputation and character.

35. The Defendant, Bolton's, statements concerning the Plaintiff, Dujovic, are false and made with reckless disregard of the truth or falsity and/or with malice.

36. The Defendant, Bolton, knew that the statements were false at the time they were made.

37. The Defendant, Bolton's, statements sought to embarrass and humiliate the Plaintiff, Dujovic, among her family, friends, peers, colleagues, and business contacts.

38. The Defendant, Bolton's, statements also sought to cause Sabates to effectively withdraw his support of the Plaintiff, Dujovic's business ventures and ultimately to cause the failure of the Business.

39. The Defendant, Bolton's, statements were defamatory per se because they

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

attacked the Plaintiff, Dujovic's, moral turpitude, character, and reputation and claim that the Plaintiff, Dujovic, engaged in immoral and illicit sexual acts, had (or has) a sexually transmitted disease, and committed a crime of accepting money for sexual acts.

40. The Plaintiff, Dujovic, has been damaged by the statements because such statements subject the Plaintiff, Dujovic, to hatred, embarrassment, distrust, ridicule, contempt, and disgrace.

41. The statements will forever falsely taint and permanently damage the Plaintiff, Dujovic's reputation, character amongst his family, friends, peers, colleagues, and business community.

42. As the identified speaker and publisher of these defamatory and false statements, the Defendant, Bolton, is liable for the effects of the defamatory statements.

43. The Plaintiff, Dujovic, has suffered and will continue to suffer damages as a direct and proximate result of the Defendant, Bolton's actions

WHEREFORE, the Plaintiff, DRAGANA DUJOVIC, respectfully requests and hereby demands that this Honorable Court enter judgment for damages against the Defendant, BRETT BOLTON, including, but not limited to, actual, special, and consequential damages, together with interest, attorney's fees and court costs, as well as such further and additional relief as this Honorable Court deems just, reasonable, necessary, and/or proper, including supplemental, subsequent and alternative relief.

**COUNT II – TORTIOUS INTERFERENCE OF BUSINESS RELATIONSHIP**

44. The Plaintiff, Djovic, hereby realleges, restates, reasserts and incorporates the allegations contained in paragraphs one (1) through thirty (30) above as if set forth at length herein.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

45. The Plaintiff, Dujovic, and Sabates first went into business with each other in 2022.

46. Specifically, Sabates assisted the Plaintiff, Dujovic, in selling certain products she was already manufacturing, such as purses, belts, and scarves.

47. During this time, the Plaintiff, Dujovic, had a close relationship with the Defendant, Bolton, who was fully aware of the fact that the Plaintiff, Dujovic, and Sabates had a business relationship with respect to the Plaintiff, Dujovic's, products.

48. The Defendant, Bolton, was not an owner of or a participant in the business of the Plaintiff, Dujovic, and was not otherwise involved in the business relationship between the Plaintiff, Dujovic, and Sabates.

49. Thereafter, sometime in late 2022, the Plaintiff and Sabates decided to start the Business.

50. The Defendant, Bolton, was not an owner of or a participant in the Business, and was not otherwise involved in the Business.

51. Sabates invested significant capital and time into the beginning stages of the Business.

52. By April 2023, the Plaintiff, Dujovic, and Sabates had developed the concept for the Business and began creating the product line with matching accessories, prints, handbags, and footwear.

53. The Defendant, Bolton, thereafter, intentionally and without justification, interfered with the Business.

54. Specifically, the Defendant, Bolton: (a) threatened and harassed both the Plaintiff, Dujovic, and Sabates; (b) forced the Plaintiff, Dujovic, to block Sabates and Jill from her

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

cellphone so that they could no longer communicate regarding the Business; (c) removed all the inventory the Plaintiff, Dujovic, had from the Business resulting in the inability for the Business to even operate; (d) caused the Sabates to cease providing any funding or support for the Business as a result of his unrelenting threats and harassment. The Business and the business relationship between the Plaintiff, Dujovic, and Sabates, ceased as a result of the Defendant, Bolton's, intentional and unjustified interference.

55. The Plaintiff, Dujovic, has suffered damages as a result of the Defendant, Bolton's, intentional and unjustified interference.

WHEREFORE, the Plaintiff, DRAGANA DUJOVIC, respectfully requests and hereby demands that this Honorable Court enter judgment for damages against the Defendant, BRETT BOLTON, including, but not limited to, actual, special, and consequential damages, together with interest, attorney's fees and court costs, as well as such further and additional relief as this Honorable Court deems just, reasonable, necessary, and/or proper, including supplemental, subsequent and alternative relief.

***COUNT III – REPLEVIN***

56. The Plaintiff, Dujovic, hereby realleges, restates, reasserts and incorporates the allegations contained in paragraphs one (1) through thirty (30) above as if set forth at length herein.

57. The Plaintiff, Dujovic, is the owner of the Personal Property and is entitled to the immediate return and possession of such.

58. Specifically, the Plaintiff, Dujovic, purchased the Personal Property with her own funds.

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

59. To the Plaintiff, Dujovic's, best knowledge, information, and belief the value of the Personal Property is approximately $229,378.00.

60. To the Plaintiff, Dujovic's, best knowledge, information, and belief, the Personal Property is still in the possession, custody and control of the Defendant, Bolton.

61. The Personal Property is, upon best information and belief, located at the Property or PODS Moving and Storage, 3233 South West 12th Avenue, Fort Lauderdale, Florida 33315.

62. The Personal Property is being wrongfully detained by the Defendant, Bolton, who obtained possession by forcing the Plaintiff, Dujovic, and their minor children from the Property, in which the Plaintiff, Dujovic, and the Defendant, Bolton, resided with their children

63. The Defendant, Bolton, has refused to return the Personal Property despite demand for same.

64. Upon best information and belief, the Defendant, Bolton, is exerting wrongful dominion and control over the Personal Property because he is angry at the Plaintiff, Dujovic, for no longer wishing to be involved with him romantically or otherwise.

65. The Personal Property has not been taken for a tax, assessment, or fine pursuant to law.

66. The Personal Property has not been taken under an execution or attachment against the Plaintiff, Dujovic's property, or, if so taken, that it is by law exempt from such taking.

WHEREFORE, the Plaintiff, DRAGANA DUJOVIC, respectfully requests and hereby demands that this Honorable Court enter judgment for replevin and possession of the Personal Property and damages against the Defendant, BRETT BOLTON, together with interest, attorney's fees and court costs, as well as such further and additional relief as this Honorable

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

Court deems just, reasonable, necessary, and/or proper, including supplemental, subsequent and alternative relief.

***COUNT IV – CONVERSION***

67. The Plaintiff hereby realleges, restates, reasserts and incorporates the allegations contained in paragraphs one (1) through thirty (30) above as if set forth at length herein

68. The Defendant, Bolton, has wrongfully converted the Personal Property, and has wrongfully deprived the Plaintiff, Dujovic, of the possession, custody and control of the Personal Property.

69. As a direct and proximate result of the Defendant, Bolton's conduct, the Plaintiff, Dujovic, has suffered damages.

WHEREFORE, the Plaintiff, DRAGANA DUJOVIC, respectfully requests and hereby demands that this Honorable Court enter judgment for damages against the Defendant, BRETT BOLTON, together with interest, attorney's fees and court costs, as well as such further and additional relief as this Honorable Court deems just, reasonable, necessary, and/or proper, including supplemental, subsequent and alternative relief.

**VERIFICATION**

I HEREBY VERIFY the allegations set forth in this Verified Complaint are true and correct.

______________________________
**DRAGANA DUJOVIC**
Date: 04/01/2024

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

DATED THIS 1ST DAY OF APRIL, 2024.

LAW OFFICES OF
SEILER, SAUTTER, ZADEN, RIMES & WAHLBRINK
2850 North Andrews Avenue
Fort Lauderdale, Florida 33311
Telephone: (954) 568-7000
Facsimile: (954) 568-2152
jseiler@sszrlaw.com
lsasser@sszrlaw.com
swahlbrink@sszrlaw.com
tlafrance@sszrlaw.com

/s/ John P. Seiler
JOHN P. SEILER, Esquire
(F.B.N. 776343)
STEVEN A. WAHLBRINK, Esquire
(F.B.N. 17496)

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# EXHIBIT "A"

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY



**W. L. Gardiner, III**
Admitted to practice in Florida
and the District of Columbia
Florida Supreme Court
Certified Family Mediator

February 27, 2024

**PERSONAL PROPERTY DEMAND LETTER**

Via e-mail law-firm@usa.net

Dr. Brett I. Bolton
c/o Rebekah S. Brown-Wiseman
408 West Oakland Park Blvd
Wilton Manors, Florida 33311

***Re: Personal Property of Dragana Dujovic***

Dear Rebekah:

I represent Dragana Dujovic regarding the return of her personal property. When my client was forced from the home she shared with your client, Dr. Brett Bolton, she was unable to take her valuable possessions, including but not limited to her keepsakes, photographs, presentations in portfolio books, university memories, drawings, usb files with her designs, her personal clothing, business inventory, two apple computers, large Ipad, two apple watches, jewelry, expensive cosmetics and other personal effects.

Attached is a partial list of personal property owned by my client with receipts attached. This list is not all inclusive. There were approximately 75 boxes of items that were packed up with my client's belongings. Dr. Bolton does not have the right to keep Dragana's personal property. He is legally required to return same to my client. My client has asked for the return of this property previously but to no avail.

Demand is here by made for the return of Dragana Dujovic's personal property within the next 10 days. Failure to return the property will result in future legal action against your client.

I hope that we are able to reach an amicable resolution without the necessity of further legal action. Thank you.

Very truly yours,

WILLIAM L. GARDINER

WLG/cms
cc: Rae Chorowski, Esq.
Dragana Dujovic

633 S. Federal Highway, 4th Floor South • Fort Lauderdale, FL 33301 • Phone: (954) 635-2665 • Email: wlg@wlgardinerlaw.com

NOT AN OFFICIAL COPY PUBLIC ACCESS – NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY

# EXHIBIT “B”

| Marc Jacobs | $1,235.85 |
|---|---|
| Poshmart | $2,463.00 |
| Gucci | $6,262.55 |
| Neiman Marcus | $15,189.81 |
| Chanel | $13,004.00 |
| Versace | $1,616.00 |
| Alo Yoga | $286.76 |
| Bloomingdales | $12,825.81 |
| Carbon38 | $1,047.72 |
| Ebay | $3,487.36 |
| Fashion Nova | $1,928.47 |
| Fendi | $3,001.35 |
| Free People | $2,016.43 |
| Herve Leger | $1,744.63 |
| Inventory Dragana Brand | $15,614.00 |
| Italist | $5,623.05 |
| Lulu | $98.00 |
| Neiman Marcus (need to cross reference with receipts above to make sure not duplicate) | $73,282.31 |
| Philipp Plean | $10,392.48 |
| Retrofete | $1,602.92 |
| Saks 5th Avenue | $2,374.41 |
| Shein | $1,503.84 |
| Skims | $288.90 |
| Adidas | $360.60 |
| Sunglass EZ | $2,424.21 |
| Swarovski | $1,269.02 |
| Ultacor | $383.60 |

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

| | |
|---|---|
| YOOX | $6,358.91 |
| Zara | $9,375.73 |
| Valentino (920,00 euros) | $997.60 |
| Balenciaga (jeans) price unknown | |
| Akira | $766.61 |
| Forever 21 | $377.19 |
| FWRD | $528.58 |
| Giglio.com (197.02 euros) | $213.64 |
| ASOS | $957.54 |
| Noliyoga | $210.49 |
| Loveshack | $600.00 |
| Naked wardrobe | $293.12 |
| IVL | $534.98 |
| Victorias Secret | $191.20 |
| Saint Laurent | $8,176.00 |
| Unknown stores | $1,266.94 |
| Total | $212,175.61 |

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

EXHIBIT III

Sabates Deposition
(8/23/2023)

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CASE NO DVCE-23-004110

CACE 23-017480 (02)
03/16/2026 - 03/20/2026
Defendant's Trial Exhibit
8
Felix Sabates v. Brett Bolton

IN RE: THE MATTER OF

BRETT IAN BOLTON obo NIKO BOLTON,
NIKI BOLTON, AND LUKA BOLTON,

Petitioner,
and

DRAGANA DUJOVIC,

Respondent.
_______________________________________________/

VIDEO ZOOM DEPOSITION
OF
FELIX SABATES

Tuesday, August 22, 2023
8:30 a.m. - 9:20 a.m.

Stenographically Reported By:
AMBER N. GABEL, COURT REPORTER
Notary Public, State of Florida
BAILEY ENTIN REPORTING
Fort Lauderdale, Florida
Phone - 954-745-9511

A. Well, I told him what I had witnessed with my own eyes.

I showed him four pages of texts from Mr. Bolton, which are not very kind, by the way.

MR. MACHADO: We provided those to Ms. Brown.

MS. BROWN-WISEMAN: I've received them, thank you.

THE WITNESS: I hope you read them.

BY MS. BROWN-WISEMAN:

Q. I have reviewed them.

Have you -- when you say you witnessed with your own eyes, what have you witnessed with your own eyes?

A. Well, where do you want me to start?

Q. Start from the very beginning and the first thing you witnessed.

A. First thing I witnessed when I met Mr. Bolton was that he was drunk as a skunk.

Q. When was that?

A. That was at the Boys and Girls Club event in Fisher Island --

Q. Who was present that you --

MR. MACHADO: I don't think Mr. Sabates was done with his answer. Will you --

BY MS. BROWN-WISEMAN:

EXHIBIT IV

Sabates Deposition

(6/12/2024)

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE23-017480

CACE 23-017480 (02)
03/16/2026 - 03/20/2026
Defendant's Trial Exhibit
19
Felix Sabates v. Brett Bolton

FELIX SABATES,

Plaintiff,

vs.

BRETT BOLTON,

Defendant.
___________________________________/

VIDEOTAPE DEPOSITION OF

FELIX SABATES

VOLUME 1 (Pages 1 - 169)

Wednesday, June 12, 2024

10:26 a.m. - 3:01 p.m.

LEXITAS
100 SE 3rd Street
Suite 2200
Fort Lauderdale, Florida 33394

Stenographically Reported By:
Alexa Goldman, FPR

Job No.: 360804

answers most of the stuff for me, so.

**Q. Your social security number -- and then the last four?**

A.

**Q. Okay. But I was right after the first**

A. Yeah.

**Q. And you reside where?**

A. I reside in Charlotte, North Carolina; Miami, Florida; Cat Cay, Bahamas.

**Q. What was the last one?**

A. Cat Cay.

**Q. 8424 Eagle Glen -- Eagle?**

A. Eagle Glen.

**Q. Eagle Glen.**

A. That's my Charlotte address.

**Q. And you own that house yourself or with somebody else?**

A. No. I own by myself.

**Q. 9401 Collins Ave., Apartment 1202, is that you in Surfside, Florida?**

A. No. That was my father that lived there.

**Q. Your father?**

A. He's dead now.

**Q. No, I understand.**

BY MR. WIDLANSKY:
**Q. Page 4, paragraph 19.**
A. Okay.
**Q. So, you stand by that as being as accurate as you can reflect?**
A. You know, I just told you I can't remember that far back. I mean, '15 might have been the year, it might have been in '14.
**Q. Fair.**
A. I don't know. It's in that area.
**Q. Okay. Fair.**
**So you go to this event and you're -- I'm paraphrasing, and don't take this the wrong way, you're a big deal at the event?**
A. Yeah, I am a big deal.
**Q. Okay. And she's there as well. Is that how I understand it, or did she go with you to the event?**
A. How can she go with me when I don't know her?
**Q. That's what I'm asking you. That's what I'm trying to understand.**
A. I didn't know the girl, never seen her in my life --
**Q. Okay.**

**Q. Did you ever ask her if she had any business advisors or accountants or any staff?**

A. Not that I remember.

**Q. Did you ever ask her about any experience that she had in the industry or --**

A. Yes, that I did. Because we would have -- she was out visiting stores in South Florida to -- and she had gone to several shows, she had been to several shows to place the merchandise in retailers. But she it was just -- she was telling me what she was doing. I was not giving her any direction about what she was doing. She was telling me how she was executing. I thought she was doing pretty good. She's good at banging on doors trying to sell her products.

**Q. Did you ever ask her for any contracts that she had entered into?**

A. No.

**Q. What about any pricing information?**

A. Yes.

**Q. And what did you ask her?**

A. Yeah. I asked her, which a normal business question, what are you paying for the Chinese manufacturers for this? What is your duty on it? Because some of the products have duty, some don't

needed she got.

**Q. Understood.**

**Would you get invoiced for these expenditures, the modeling and the samples and things like that, that you were paying for?**

A. You need to ask Katie.

**Q. Okay. In the document production that we got that was marked as Exhibit 3, there's invoices that -- I'm looking at an invoice dated April 25th, 2023, and it's billed to FS@FelixSabates.com.**

**For the record, it's Bates as Sabates 99.**

**And it says, "Digital campaign for Dragana PPC ads Sun-Sentinel Miami, magazine editorial," and it's 2700. Do you know that was for?**

A. I'm thinking I remember the conversation with her about -- oh, yes. She ran some ads in Miami Herald or Miami -- one of those things in the -- yeah, when you said it, it rung a bell. It was for that, she ran some ads.

**Q. Who was she running ads -- what was this for, though?**

A. Okay. See, the way you get a business successful, you start out testing the waters and do marketing research. You don't just go out, I'm going to start making all these widgets and the next day

**Q Okay, fair. Saves time, right. And you also write: The time invested in the business relationship has been lost. I see that.**

A That to me is more available than the money.

**Q You can't quantify, though, that; correct?**

A When you get to 80 years old, you quantify every second of your life.

**Q Fair. But business person to lawyer/businessperson to businessperson sitting here today, you can't put a dollar value on this time that you invested in the business relationship?**

MR. ZADEN: Object to the form. You can answer.

A What is my time worth? Is that what you're asking me?

BY MR. WIDLANSKY:

**Q I'm asking you, if you can quantify it or if you're going to try to quantify it, to try to get that money back in this lawsuit.**

A I didn't say that I wanted to get that money back, but if you want me to.

**Q Fair.**

A I have probably in airplanes alone, airplane trip back and forth down here, I probably

got $150,000. I can tell you that.

**Q If you're sitting here telling me that you're not claiming it as monetary damages in the lawsuit, we're going to skip through it; right? If you're telling you are claiming it, then I got to ask you questions about it.**

A I'm not claiming the past expenses that I had, you know, because I know it would be very hard for me to come up with the actual number. Now the airplane, I can come up with that real easy. Just get the flight department to give me the fly sheets. I made at least four or five trips just to meet with Dragana about products with different people, but I'm not claiming that.

**Q You're not claiming it?**

A No.

MR. ZADEN: Let me object to that.

MR. WIDLANSKY: You're objecting to your client's answer?

MR. ZADEN: I'm objecting to the form of the question. We have an expert that's calculating all that, and I think you know that. And it's kind of beyond his realm as a layperson to quantify what the damages are at this point. I thought that was already laid

# EXHIBIT V

# Jill Coshland Deposition

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. CACE 23-017480 (02)

FELIX SABATES,

Plaintiff,

v.

BRETT BOLTON,

Defendant.
_________________________________/

CACE 23-017480 (02)
03/16/2026 - 03/20/2026
Defendant's Trial Exhibit
14
Felix Sabates v. Brett Bolton

REMOTE DEPOSITION OF

JILL COSHLAND

VOLUME 1 (Pages 1 - 91)

Thursday, January 15, 2026
9:50 a.m. - 11:53 p.m.

LOCATION: Remote via Zoom
Miami, Florida

Reported by: Taylor Fox,
Notary Commission No. FL HH 631150

Job No.: 430266

A. Yes.
**Q. Do you reside in Miami?**
A. Yes.
**Q. Do you split time between North Carolina and Miami, or are you almost full-time Miami?**
A. Now almost full-time in Miami.
**Q. Understood. And at the place you are in right now, is anybody there with you?**
A. Felix is in our condo. He's got business people coming in, so he's about -- around and about, but not directly with me.
**Q. Fair. The room you're in, is there anybody else in the room with you right now?**
A. No.
**Q. Now, I talked to you about conversations you had with Felix in preparation of the deposition. You told me it was about 5 to 10 hours in total of time. What about documents? Did you review any documents in preparation of your deposition?**
A. No.
**Q. Not a single document?**
A. No.
**Q. You didn't look at the lawsuit in this case?**
A. No.
**Q. You didn't look at any prior deposition**

# EXHIBIT VI

## Dujovic Deposition

IN THE CIRCUIT COURT
OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. CACE23-017480 (02)

FELIX SABATES,

Plaintiff,

vs.

BRETT BOLTON,

Defendant.
___________________________/

CACE 23-017480 (02)
03/16/2026 - 03/20/2026
Defendant's Trial Exhibit
16
Felix Sabates v. Brett Bolton

Zoom Videoconference
Monday, December 11, 2023
10:11 a.m. - 12:33 p.m.

DEPOSITION

OF
DRAGANA DUJOVIC

P R O C E E D I N G S

- - - - -

DRAGANA DUJOVIC,

a witness named in the notice heretofore filed, being of lawful age and being first duly sworn in the above cause, testified on her oath as follows:

EXAMINATION

BY MR. SCHLESINGER:

Q. Good morning.

A. Good morning.

Q. As you may know, I represent Mr. Sabates, who is also on this Zoom, and I'll be asking you some questions. Have you been deposed before?

A. Yes, I did; deposed by another attorney, yeah.

Q. Okay. So you know the rules about when people object, to wait a bit to see if they instruct you not to answer, that kind of stuff?

A. Yes, I do.

Q. Okay. Let me just pull my complaint and we'll get started. When did you first meet Mr. Sabates?

A. I met Mr. Sabates 2015 at Boys & Girls Club in Fisher Island.

relationship with Dr. Bolton?

A. Yeah, you know, we went for a couple of dates, and yeah, we started dating pretty fast, couple of months after, and I fall in love, yeah. So a couple of months after we started dating, yeah.

Q. Did you start living with him at some point?

A. Yes, we start living seven months after.

Q. And this is around 2015?

A. Right.

Q. 2015, 2016?

A. Until the end of 2015.

Q. And where did you live? What was the address?

A. We lived on 3040 Northeast 41st Street.

Q. Was it a house? Apartment?

A. It was a house that he used to own the house that's his home, that was his house. He was previously married so he bought that house with his ex-wife, then he got divorced, and then he stayed at that house. His practice was in Fort Lauderdale, so we lived there for next six years.

any assault or battery on you, either hitting you or tying you up, or any type of sadomasochism?

A. Absolutely not.

Q. Returning to Dr. Bolton -- well, do you know when Mr. Sabates met Dr. Bolton?

A. Yes, he met him at 2022 in December on Fisher Island -- or no actually. No, no, no, no, no. He met him before. Mr. Sabates invited us for a boat -- it was celebration before Christmas or something like that.

So he invited in a group text me and Brett to come and be his guests. So we went for the boat ride all together, and there was Mr. Sabates' maybe friends as well and family members. So we took a boat rode.

And then after we had a dinner at the Seaspice and then we left home, yeah. So that was I think November. I will have to look at the pictures. Sometime (indiscernible) that's the first time.

Q. Did Mr. Sabates meet Brett Bolton at a Boys & Girls Club event at Fisher Island before that?

A. I think that -- I think Fisher Island was after in December, I just -- but yes, he met