# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CIVIL ACTION NO. 3:26-cv-00291

JILL COSHLAND,

    Plaintiff,

v.

BRETT BOLTON,

    Defendant.

)
)
)
)
)
)
)
)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND MOTION TO TRANSFER**

Now comes the Defendant and submits the following memorandum in support of his motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) 12(b)(2), and 12(b)(6), and motion to transfer pursuant to 28 U.S.C. § 1404.

## Procedural Background

The Plaintiff commenced this action by the filing of a complaint in the Western District of North Carolina on April 15, 2026. The Plaintiff asserts claims for tortious interference with business, negligent infliction of emotional distress, and intentional infliction of emotional distress.

The matter is before the court on the Defendant's Motion to Dismiss and Motion to Transfer.

## Statement of Facts

The Plaintiff alleges that she is engaged to Mr. Felix Sabates. (Complaint ¶ 1) She alleges that she and Mr. Sabates had a plan to start a business with Dragana Dujovic, who was in a romantic relationship with the Defendant, Dr. Brett Bolton. (Complaint ¶ 1) According to the Plaintiff's sworn testimony in a deposition from Florida, she is a citizen of the state of Florida

living almost full time in Florida.  (Bolton Affidavit, Exh. V (Plaintiff's deposition transcript))  According to the deposition testimony of Mr. Sabates, he is a resident of North Carolina and Florida, and Cat Cay, Bahamas.  (Bolton Affidavit, Exh. 4, p 14)

The Plaintiff alleges that the Defendant had concerns that Mr. Sabates and Dragana were having a romantic relationship. (Complaint ¶ 44) This culminated on May 5, 2023, when the Defendant placed a phone call to Mr. Sabates while he was in Charlotte. (Complaint ¶ 45)  She alleges that Mr. Sabates informed her of the content of the call after it ended.  (Complaint ¶ 48)  She alleges that during this call, the Defendant threatened to harm and "kill" Sabates if he continued to have a business relationship with Ms. Dujovic.  She also alleges that the Defendant sent text messages to Mr. Sabates defaming Mr. Sabates and making vile statements to him.  (Complaint ¶ 50)  She further alleges that the Defendant informed Sabates that he (the Defendant) would reveal this information to Ms. Coshland (the Plaintiff).  (Complaint ¶ 53)  These messages pertained to Sabates, and not to Coshland.  (Complaint ¶ 55)

She alleges, "As with the phone call, Ms. Coshland felt significant distress, anxiety and shame  after Bolton's text messages. She, as did Mr. Sabates, feared for physical safety if and when they next saw Bolton, and were concerned that Bolton would attempt to create a messy public incident  as retribution against Ms. Coshland and Mr. Sabates."  (Complaint ¶ 58)  She further alleges, "Upon information and belief, Bolton continued to disparage Ms. Coshland through  May and June 2023, repeating his vulgar statements to numerous individuals in his social circle, many of whom know Ms. Coshland, in an effort to further threaten the future business prospects of Fashions by Dragana." (Complaint ¶ 64)  She further alleges, "Ms. Coshland felt further acute angst for the health of her fiancé.  Mr. Sabates suffered from a heart

2

condition that can be suddenly and significantly worsened through stress and physical or mental distress." (Complaint ¶ 61)

The Plaintiff alleges that as a result of the Defendant's phone call and text messages to Sabates, Sabates decided to terminate the business plans. (Complaint ¶ 71) As a result, the Plaintiff claims economic losses.

The Plaintiff was in Charlotte at the time of this call and these messages. (Complaint ¶ 48, 74) At this time, the Defendant was in the State of Florida. (Bolton Affidavit ¶ 22)

Prior to the filing of this action in the Western District of North Carolina, two other related actions were filed in state court in the state of Florida. (Bolton Affidavit ¶¶ 28, 32s). Felix Sabates sued the Defendant, Dr. Brett Bolton, alleging claims for defamation and also alleging essentially the same claim for loss of the business opportunity. Similarly, Dragana Dujovic, filed suit in Florida, alleging loss of business opportunity. In both of those cases, Mr. Sabates and Ms. Dujovic allege that the Defendant, Dr. Brett Bolton, interfered with their business opportunity in connection with the fashion business, and they are seeking lost earnings from said business opportunity.

## <u>Argument</u>

The Defendant hereby moves to dismiss this action on several grounds.

First, this court does not have diversity jurisdiction, because the Defendant and the Plaintiff are both residents of the state of Florida, thereby defeating federal diversity jurisdiction.

Second, the Defendant is not subject to personal jurisdiction in North Carolina because there are not sufficient minimum contacts to confer jurisdiction over him in the state of North Carolina, .

Third, the plaintiff's claim for loss of business opportunity is a claim by one of three joint ventures to a business relationship. Two of the other three business partners have filed suits in Florida over the same matter, and those parties are not present in the North Carolina action. plaintiff does not have standing to sue the defendant for loss of this business opportunity. The plaintiff may not maintain this action in North Carolina federal court against the defendant.

Fourth, the Plaintiff has not stated claims for negligent or intentional infliction of emotional distress. For these reasons, this action should be dismissed.

Fifth, the amount in controversy is not sufficient to invoke federal jurisdiction.

Finally, in the alternative, the Plaintiff is a citizen of North Carolina, then this matter should be transferred to the Southern District of Florida pursuant to 28 U.S.C. 1404.

I. THE PARTIES ARE NOT DIVERSE AND THERE IS NO DIVERSITY JURISDICTION

The Plaintiff's case should be dismissed for a lack of jurisdiction, as the parties are not diverse. The Plaintiff asserts jurisdiction in this court on the basis of diversity, pursuant to 28 U.S.C. § 1332(a). It is undisputed that the defendant is a citizen of the state of Florida. The only issue is there for the state of citizenship of the plaintiff, Jill Coshland.

Pursuant to 28 U.S.C. § 1332(a), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) Citizens of different States; . ."

Upon a motion to dismiss under Rule 12(b)(1), a court must dismiss a complaint in its entirety if it determines that it lacks subject matter jurisdiction. Sutton v. Charlotte-Mecklenburg Schs., No. 3:18-cv-00161-FDW-DCK, 2018 U.S. Dist. LEXIS 128102 (W.D.N.C. July 31, 2018)

4

(citation omitted). Furthermore, "the party seeking federal jurisdiction has the burden of proving that subject matter jurisdiction exists." Id.

The Plaintiff's deposition was taken in a case in Florida State Court. In her sworn deposition, taken on January 5, 2026 (slightly more than three months before the filing of this action), the Plaintiff testified that she was living almost full-time in Florida. The following exchange occurred at her deposition:

Q.      Do you reside in Miami?

A.      Yes.

Q.      Do you split time between North Carolina and Miami, or are you almost full-time Miami?

A.      Now almost full-time in Miami. (p 9)

On a motion to dismiss for lack of diversity pursuant to Rule 12(b)(1), the court may consider materials outside of the Complaint. Schaefer v. Marion I. & Henry J. Knott Found., Inc., 1987 U.S. App. LEXIS 19652, *1 (4th Cir; no. 86-3622) (March 11, 1987) ("In the absence of complete diversity, the court Lacks subject matter jurisdiction. Pursuant to statute blank, the court does not have diversity jurisdiction unless the planet of independent are citizens of different states."; affirming dismissal where affidavits established citizenship, even though face of complaint established diversity).

Based on the Plaintiff's deposition testimony, her citizenship (*i.e.* domicile) is in the State of Florida. "Generally speaking domicile is an individual's place of residence where he intends to remain permanently or indefinitely and to which he intends to return whenever he is away." Hollowell v. Hux, 229 F. Supp. 50, 52 (E.D.N.C. 1964).

For this reason, this action should be dismissed.

5

## II.  THE COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANT.

The Defendant is not subject to personal jurisdiction in North Carolina, and thus the action should be dismissed pursuant to Rule 12(b)(2).

On a motion to dismiss under Rule 12(b)(2), "the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citation omitted). When the court "considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).

The relevant facts pertaining to this defense are the following:  The Defendant has been a resident of Florida since 1994.  (Bolton Affidavit ¶ 5) The Defendant has never been to North Carolina.  (Bolton Affidavit ¶ 17)  The Defendant is a medical doctor and will serve patients who live in North Carolina, but those services will be provided at the Defendant's Florida office. (Bolton Affidavit ¶ 10-13)  The Defendant did not know where Mr. Sabates was at the time he made the call and sent the messages, and the location of Mr. Sabates at that time was immaterial to the Defendant's conduct.  (Bolton Affidavit ¶ 23)

The Plaintiff attempts to establish personal jurisdiction based on two basic issues.  One is that she was in Charlotte and was with Mr. Sabates when the Defendant sent text messages to and called Mr. Sabates. The other is that she had plans for a business venture which might have had some ties to North Carolina, if it had ever begun operations.

6

Specifically, The Plaintiff alleges that she was with Mr. Sabates in Charlotte, North Carolina on the evening of May 5, 2023, when Mr. Sabates received Bolton's call and text messages. (Complaint ¶ 74) She asserts that the Defendant "was attempting to cause emotional distress to Ms. Coshland, as well as Mr. Sabates, while they were located in North Carolina, and hoped to trigger physical health complications to Mr. Sabates, which would have resulted in physical injuries within this State." (Complaint ¶ 75) "The fledging business Fashions by Dragana was going to be operated from Charlotte and be registered as a North Carolina limited liability company." (Complaint ¶ 76) She claims that she, Sabates and Dujovic met with accountants and "other third parties" who would be involved in the business in North Carolina. She further asserts, "A substantial portion of the harm resulting from Bolton's tortious actions has been felt in North Carolina, including the severe emotional distress suffered by Ms. Coshland in the immediate aftermath of May 5, 2023." (Complaint ¶ 78)

With regard to the business: The Plaintiff alleges that in February 2023, Ms. Dujovic travelled to Charlotte, North Carolina for business meetings with Ms. Coshland and others related to the fledging business. (Complaint ¶ 26) One of those meetings was with an accounting firm located in Charlotte to discuss entity formation and tax treatment. (Complaint ¶ 27) Mr. Sabates also spoke with a lawyer who provided advice on business formation, intellectual property, and formation documents. (Complaint ¶ 28) During the same period while Ms. Dujovic was in North Carolina in February 2023, Ms. Coshland, Mr. Sabates, and Ms. Dujovic participated in a meeting with Mr. Sabates's brother, Arturo Sabates, who has significant distribution contacts, including with several well-known national chains expected to be interested in the Company's products once launched. (Complaint ¶ 29)

In this case, there is no suggestion that the Defendant is subject to "general jurisdiction." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) ("General personal jurisdiction, requires 'continuous and systematic' contacts with the forum state 'such that a Defendant may be sued in that state for any reason."). The only issue is therefore whether the Defendant is subject to specific jurisdiction in North Carolina.

Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to the Defendant's contacts with the forum. Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Specific jurisdiction is based on the concept that a party who enjoys the privilege of conducting business in the forum state should bear the reciprocal obligation of answering to legal proceedings in that forum state. International Shoe v. Washington, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945). However, "to justify the exercise of personal jurisdiction over a non-resident the Defendant, the Defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate presence and thus render the sovereignty just.'" Consulting Engineers, 561 F.3d at 277-78 (quoting ESAB Group, 126 F.3d at 623). It is essential that the plaintiff show that the Defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

The Fourth Circuit has "synthesized the Due Process Clause for asserting specific jurisdiction into a three-part test . . '(1) the extent to which the Defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the Plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction

would be constitutionally reasonable.'" <u>New Wellington, 416 F.3d at 294</u> (citing <u>Mitrano v. Hawes</u>, 377 F.3d 402, 407 (4th Cir. 2004)). Furthermore, "the Fourth Circuit has made it clear that due process requires that the Defendant's contacts with the forum state be tantamount to physical presence there." <u>Ritz Camera Centers, Inc. v. Wentling Camera Shops, Inc., et al.</u>, 982 F.Supp. 350, 353 (D. Md. 1997).

With regard to the first prong, the touchstone of the purposeful availment inquiry is whether "the Defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). "If, and only if, we find that the Plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three." <u>Consulting Engineers Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir. 2009).

Here, the Defendant has not purposefully availed itself of the privilege of conducting activities in this State.

> In determining whether a the Defendant has purposely availed itself of the privilege of conducting business in a State, [courts] have identified numerous nonexclusive factors to be considered, such as - (1) whether the Defendant maintained offices or agents in the State; (2) whether the Defendant maintained property in the State; (3) whether the Defendant reached into the State to solicit or initiate business; (4) whether the Defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the Defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

<u>Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.</u>, 911 F.3d 192, 198-99 (4th Cir. 2018).

9

Here, the Defendant has not maintained offices or agents in North Carolina. The Defendant has never maintained property in North Carolina. The Defendant never reached into the State to solicit or initiate business. The Defendant has not deliberately engaged in significant or long-term business activities in the State. There is no choice of law clause in this case. The Defendant did not make in-person contact with a resident of this State regarding a business relationship. Relevant contracts did not require performance of duties in this State. There were no contracts formed in this case. Although the Defendant and Mr. Sabates discussed the business, the Plaintiff was not involved with that prospective business.

The Plaintiff's anticipated or contemplated business activities in North Carolina does not confer personal jurisdiction over the Defendant. The inquiry is whether the Defendant "deliberately engaged in significant or long-term business activities in the State." Sneha, 911 F.3d at 198. *See* Tiverton Advisors, LLC v. AgriFruit, LLC, No. 5:22-CV-51-FL, 2022 U.S. Dist. LEXIS 135551 (E.D.N.C. July 29, 2022) (the issue is "not whether the parties were anticipating or contemplating doing so").

Despite the fact that the business partners allegedly contemplated that the business would be operated from Charlotte and be registered as a North Carolina Limited Liability Company, the business was never formed. Although the Plaintiff, Ms. Dujovic, and Mr. Sabates allegedly had meetings with accountants and other third parties who were going to be involved in the business in North Carolina, the Plaintiff never entered into any contracts. Therefore, Plaintiff's anticipation or contemplation of engaging in business activities in North Carolina is insufficient to confer personal jurisdiction here.

The Defendant's contacts with North Carolina are not tantamount to physical presence there. In Hyde Park Storage Suites, Inc. v. Crown Park Storage Suites, LLC, the Defendant's

conducting telephone calls with, and sending text messages to plaintiff's agent who was located in North Carolina and using a North Carolina-based phone number; sending flyers, promotional materials, and agreements via email and regular mail to plaintiff's agent's North Carolina address; and sending personalized contracts to plaintiff's agent in North Carolina were not tantamount to a physical presence in North Carolina. <u>Hyde Park Storage Suites, Inc. v. Crown Park Storage Suites, LLC</u>, No. 3:18-CV-673-RJC-DCK, 2019 U.S. Dist. LEXIS 168866 (W.D.N.C. July 11, 2019). Similar to the facts in <u>Hyde</u>, the Defendant conducted a phone call and text messages to Plaintiff's fiancé, Mr. Sabates, who was located in North Carolina. The Defendant's phone calls and text messages to Mr. Sabates are therefore not tantamount to physical presence in North Carolina.

That Mr. Sabates and the Plaintiff have connections to North Carolina is not relevant to the issue of personal jurisdiction over the Defendant. "The U.S. Supreme Court has consistently rejected attempts to satisfy the Defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the Plaintiff (or third parties) and the forum State." <u>Walden v. Fiore</u>, 571 U.S. 277, 134 S. Ct. 1115 (2014).

The Plaintiff is, in essence, arguing that the harm occurred in North Carolina; but this argument has been expressly rejected. "The proper question is not where the Plaintiff experienced a particular injury or effect but whether the Defendant's conduct connects him to the forum in a meaningful way." <u>Walden v. Fiore</u>, 571 U.S. 277, 134 S. Ct. 1115 (2014).

On these facts, the Defendant is not subject to personal jurisdiction in North Carolina.

III.      THE PLAINTIFF DOES NOT HAVE STANDING TO ASSERT CLAIMS FOR DAMAGE TO THE PARTNERSHIP.

11

The Plaintiff lacks standing to sue for the alleged business loss, and this court therefore lacks subject matter jurisdiction over this claim.

The Plaintiff first asserts a claim for tortious interference with prospective business relations. The essence of this argument is that she, Dujovic and Sabates were going to be equal partners in a fashion business. The plan was to form an LLC, but this never occurred.

According to the Complaint, in or around 2022, Mr. Sabates decided to pursue a business opportunity with Dragana Dujovic, who manufactured consumer goods such as purses, belts and scarves. (Complaint ¶ 21) The business was set to be called "Fashions by Dragana" and be co-owned in one-third shares by the Plaintiff, Mr. Sabates, and Ms. Dujovic. (Complaint ¶ 22) Ms. Dujovic was to design the items, Mr. Sabates was to provide the funding, and the Plaintiff would handle day-to-day operations. (Complaint ¶ 23)

The Plaintiff alleges that the Defendant's "attacks" on her and Sabates were successful in terminating the fledging business. (Complaint ¶ 65) After the phone call and text messages, the Plaintiff and Sabates both came to the conclusion that being in business with Ms. Dujovic "was not feasible given Bolton's behavior and his targeted threats. They were, reasonably, in fear that Bolton would continue to harass and threaten both of them if they continued with the business." (Complaint ¶ 68) As a result, Mr. Sabates did not provide any further capital, and neither he nor the Plaintiff took any further steps to launch Fashions by Dragana. (Complaint ¶ 70)

The Plaintiff alleges that the business "Fashions by Dragana" would be operating but for the Defendant's actions. (Complaint ¶ 90) She alleges, "Ms. Coshland has been monetarily damaged by Bolton's intentional interference in the form of lost salary and profits from the Fashion by Dragana entity that would have launched but for Bolton's conduct." (Complaint ¶

12

91)  She further alleges, "An independent analysis of the equity value of Fashions by Dragana had it launched estimated the enterprise value of Fashions of Dragana as of March 1, 2023, to be between $2.0  million and $11 million, to which Ms. Coshland would have been entitled to one third (33.3%)."  (Complaint ¶ 92)

At the time of the Defendant's conduct, the Plaintiff, Sabates and Dujovic had not formed a corporate entity.  Thus, they were operating as a *de facto* partnership.  *See generally* <u>Compton v. Kirby</u>, 157 N.C. App. 1, 10, 577 S.E.2d 905, 911 (2003) (discussing *de facto* partnerships, including that they can exist without a writing).  *Accord* <u>Vulcan Furniture Mfg. Corp. v. Vaughn</u>, 168 So. 2d 760, 764 (Fla. App. 1964) ("The legal character of the partnership ceased to continue as a de jure limited partnership, but became a de facto limited partnership.")  The Plaintiff, individually, was pursuing no business with respect to fashion items; her only venture was the joint venture with her two partners, Dujovic and Sabates.  Each partner had distinct roles, and the Plaintiff did not provide the funding nor the creative input for the business; her role was managing day-to-day operations.  As such, she has no claim for her alleged losses, apart from her claim in the partnership.

As such, the individual partners do not have an individual loss, separate and apart from the loss to the business venture.  As such, any claim brought for damage to the fledgling business most people brought by the partnership itself.  An individual member of the partnership lacks standing to bring such an action individually. "It is settled law in this State that one partner may not sue in his own name, and for his benefit, upon a cause of action in favor of a partnership." <u>Godwin v. Vinson</u>, 251 N.C. 326, 327, 111 S.E.2d 180, 181 (1959).  *Accord* <u>Threadgill v. Faust</u>, 213 N.C. 226, 230, 195 S.E. 798, 800 (1938) ("The general rule in this jurisdiction is that one partner may not sue in his own name alone, and for his own benefit, upon a cause of action

13

accruing to the partnership. The action must be prosecuted in the name of the real party in interest.").

This is a widely recognized principle of law.

> [A] partnership cause of action belongs to and is the specific property of the partnership, and that one merely owning an interest in the partnership may not, absent exceptional circumstances, bring suit either on such a cause of action as a whole, whether in the name of the partnership or in his own name, or for the fractional share of such a cause of action corresponding to his fractional interest in the partnership. Indeed, the general rule seems to be that even a single partner, at least absent the consent of a majority of the partners, may not ordinarily do so.

Cates v. Int'l Tel. & Tel. Corp., 756 F.2d 1161, 1176 (5th Cir. 1985). *Accord* Lewis v. Seneff, 654 F. Supp. 2d 1349, 1366 (M.D. Fla. 2009) ("Plaintiffs' claims against the General Partners for breach of the limited partnership agreements for failing provide the limited partners with sufficient merger consideration must be asserted as derivative claims, which Plaintiffs failed to so."); Wolf v. Bickham, 498 F. Supp. 3d 897, 906 (E.D. La. 2020) ("A judgment rendered in SLP's absence would not be adequate because the injuries Wolf alleges are in fact injuries suffered by SLP as they are tied to SLP's sole asset, ownership, and management. Wolf, as a partner, is only indirectly harmed."; "SLP is an indispensable party whose joinder would deprive it of subject-matter jurisdiction over this case. As a result, the case should be dismissed"); Urquhart v. Wertheimer, 646 F. Supp. 2d 210, 213 (D. Mass. 2009) ("Because Plaintiff asserts claims that are derivative to rights retained by the Partnership, this court concludes that the Partnership is both a 'necessary' and 'indispensable' party to this action."); Dinuro Invs., LLC v. Camacho, 141 So. 3d 731, 733 (Fla. App. 2014) (individual member of LLC does not have standing to sue fellow members for harm to the LLC).

The Cates court elaborated on this as follows:

> Accordingly, any claims for damages which Cates suffered by reason of diminution in value of his partnership interest, or his share of partnership income,

14

or his salary or bonus from the partnerships or their businesses, by reason of breach of such agreements, or tortious interference with such businesses, or anticompetitive conduct interfering with or limiting or "taking over" such businesses or their activities, are in effect subsumed within the causes of action of the partnerships and do not afford Cates (or his legal representative) a separate, individual cause of action. This is also true with respect to loss of business reputation or good will flowing from damage to or failure of the partnership businesses, and with respect to loss of opportunity for future advancement in the insurance industry generally, resulting from damage to the partnership businesses that might otherwise have afforded Cates, as a partner therein, a wider scope or more prestige or the like.

Cates, 756 F.2d at 1181 ("a cause of action accruing to a partnership is partnership property").

[A] limited partner's power to vindicate a wrong done to the limited partnership and to enforce redress for the loss or diminution in value of his interest is no greater than that of a stockholder of a corporation. As a general proposition, where a corporation suffers loss because of the acts of officers, directors, or others which diminish or render valueless the shares of stock of a stockholder, the stockholder does not have a direct cause of action for such damages, but has a derivative cause of action on behalf of the corporation to recover the loss for the benefit of the corporation.

Strain v. Seven Hills Associates, 75 A.D.2d 360, 371, 429 N.Y.S.2d 424, 432 (1980).

The Strain case has been cited by Circuits 2, 3, 4, 5, 6, 8, 9 and 10, and by the North Carolina Supreme Court in Energy Investors Fund, L.P. v. Metric Constructors, Inc., 351 N.C. 331, 334, 525 S.E.2d 441, 443 (2000)).[1]

---

[1] In addition to the well-established legal doctrine holding that an individual partner does not have standing to bring a claim for damage to the partnership, to allow the Plaintiff to bring such an individual claim would raise significant logistical and judicial issues. If the Plaintiff were allowed to bring such a case, there would be tremendous potential for inconsistent verdicts among the differing lawsuits. In addition, it would be great and efficiency of judicial resources to litigate the same business loss in two or three forums.

15

For this reason, the court lacks subject matter jurisdiction over the plaintiff's claim for the alleged business loss, and the Plaintiff fails to state a claim for business loss, and this claim should be dismissed.

IV.     THE PLAINTIFF FAILS TO STATE A CLAIM FOR INFLICTION OF EMOTIONAL DISTRESS.

The Plaintiff's claims for emotional distress fail to state a claim for which relief can be granted.

The Plaintiff alleges that the statements made by Bolton in the phone call and text messages, which included emotional abuse, harassment, and unambiguous threats, were "extreme and outrageous, clearly exceeding the bounds of civilized society." (Complaint ¶ 96) She alleges that the Defendant intended to harm her. (Complaint ¶ 97) She notes that she and Sabates have a close relationship and that it was foreseeable that the Defendant's conduct would result in emotional distress to her. (Complaint ¶ 98)

She further alleges that she "suffered severe emotional distress, including fear and anxiety that Bolton (who has a history of mental instability) would continue to harass, threaten, and/or emotionally and physically harm Mr. Sabates. She also felt and continues to feel apprehension that Bolton will target her with similar vulgar and abusive harassment or attempt to defame her in  the public sphere." (Complaint ¶ 100) She further contends that she was in the "zone of danger." (Complaint ¶ 104).

"Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a claimant must allege facts in his complaint that 'raise a right to relief above the speculative level.'" Burrell v. Bayer Corp., 260 F. Supp. 3d 485, 489 (W.D.N.C. 2017) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  "Further, a complaint will not

16

survive Rule 12(b)(6) review where it contains 'naked assertion[s] devoid of further factual enhancement.'" Id. at 489.

The Plaintiff moves to dismiss the plaintiff's claim for intentional infliction of emotional stress for failure to state a claim upon which relief may be granted.

The Plaintiff's claim for intentional infliction of emotional distress is based on an allegation that the Defendant placed a phone call to her husband and sent him text messages over a period of a few days. She did not receive his phone call or these text messages herself, and they were not directed at her. She simply claims that she later saw these messages or was told the contents of these messages, and that this caused her severe emotional distress.

With respect to a claim for intentional infliction of emotionless dress, the well-established law in North Carolina does not support such a claim. The North Carolina courts are wary to recognize conduct that supports a claim for intentional infliction of emotional distress (IIED). In this case, the messages and phone call at issue were not even directed to the plaintiff.

In order to state a claim for IIED, the "'extreme and outrageous behavior' must be more than "mere insults, indignities, and threats." Guthrie v. Conroy, 152 N.C. App. 15, 22, 567 S.E.2d 403, 409 (2002) (dismissing IIED claim where defendant, *inter alia*, held plaintiff from behind, touched her, placed a lampshade on her head when fell asleep, threw soil and water on her; "Conroy's alleged behavior, while annoyingly juvenile, obnoxious, and offensive, does not rise to the level of 'outrageous and extreme' as the term has been interpreted and applied in tort actions alleging IIED."). *See also* Briggs v. Rosenthal, 73 N.C. App. 672, 675, 327 S.E.2d 308, 310 (1985) (dismissing IIED claim where defendant wrote negative article regarding plaintiff's deceased son); Johnson v. Bollinger, 86 N.C. App. 1, 5-6, 356 S.E.2d 378, 381-82 (1987) (IIED claim properly dismissed where defendant approached plaintiff in angry and threatening manner

while carrying pistol, shook his hand in plaintiff's face, and said in loud voice, "I will get you");

Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 493-94, 340 S.E.2d 116, 122-23

(affirming summary judgment for defendants as to IIED claims where allegations involved

screaming and shouting, name-calling, throwing objects).

In this case, the Defendant's actions in sending text messages and calling Mr. Sabates do

not rise to the level of outrageous and extreme conduct.  The Plaintiff's claim is especially

attenuated because the Defendant's communications were not directed to the Plaintiff, and the

Defendant did not know and had no way that the Plaintiff was in Sabates' presence.

With regard to a claim for negligence infliction of emotional distress (NIED), the conduct

she asserts is intentional in nature and therefore cannot support a claim for negligent infliction of

emotional distress.  Horne v. Cumberland Cnty. Hosp. Sys., Inc., 228 N.C. App. 142, 149, 746

S.E.2d 13 (2013) (dismissing plaintiffs NIED claim that was premised on intentional, rather than

negligent, conduct).

Secondly, liability for NIED is rarely extended to third persons (*i.e.* persons to whom the

defendant's conduct is not directed), due to foreseeability.  For example, where a motorist

negligently causes and accident, resulting in the death of another motorist or pedestrian, and the

deceased pedestrian's family is informed of the death by phone which inflicts emotional distress

upon them, the North Carolina courts routinely hold that there is no cause of action for negligent

infliction of emotional distress. The chain of causation is simply broken. *E.g.* Gardner v.

Gardner, 334 N.C. 662, 663, 435 S.E.2d 324, 325-326 (1993).  *Accord* Sorrells v. M.Y.B.

Hospitality Ventures, 334 N.C. 669, 674, 435 S.E.2d 320, 323 (1993) (rejecting NIED claim

where tavern sold alcohol to patron who drove while intoxicated and died, resulting in emotional

distress to his parents).

In <u>Fields v. Dery</u>, 131 N.C. App. 525, 526, 509 S.E.2d 790, 790 (1998), the plaintiff was traveling behind her mother's vehicle when the defendant ran a stop sign and collided with the mother's vehicle, killing the mother. The daughter sued the motorist for NIED, based in part on the fact that she witnessed the collision. The court, however, rejected this claim, stating "the possibility in the case before us that decedent might have had a child following her in a separate vehicle, who might witness the collision and suffer severe emotional distress because of defendant's alleged negligence, could not have been reasonably foreseeable to defendant." <u>Id.</u> at 529, 509 S.E.2d at 792.

In this case, the phone call and text messages do not contain any threat to the Plaintiff. Further, it was mere happenstance that the Plaintiff was in the presence of Sabates when he received them, and that he would relay all of this to her. It was simply unforeseeable that the Defendant's actions would cause severe emotional distress to the Plaintiff. <u>Fields</u>.

Finally, the Plaintiff has not sufficiently alleged the type of emotional distress that is required to support these claims. As the North Carolina courts have held many times, such a claim requires severe and disabling emotional distress. <u>Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.</u>, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) ("The term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."; "mere temporary fright, disappointment or regret will not suffice"). In this case, the plaintiff has not alleged this type of emotional distress.

Cases from the federal courts in North Carolina have dismissed claims for emotional distress that lack further specificity. *E.g.* <u>Lineberger v. Newton Police Dep't</u>, 2016 U.S. Dist.

19

LEXIS 130541, *11 (W.D.NC.) ("Lineberger's allegation of experiencing 'worry,' 'embarrassment,' and 'humiliation' is insufficient to rise to the level of severe emotional distress. These emotions constitute neither a diagnosable emotional or mental disorder nor a mental state comparable to the mental conditions identified in *Johnson*'s definition of the phrase 'severe emotional distress.'").  Further, cases from North Carolina State Court are likewise stringent on requiring the emotional distress aspect of these claims to be pled with specificity. Generalize allegations of emotional distress are insufficient.  Cauley v. Bean, 282 N.C. App. 443, 451, 871 S.E.2d 870, 876 (2022) (mere allegation that "plaintiff suffered severe emotional distress" are insufficient; Plaintiff's complaint "fails to state a valid claim for NIED.").

 For these reasons, the Plaintiff's claims for NIED and IIED should be dismissed.


V. THE COURT LACKS SUBJECT MATER JURISDICTION OVER THE PLAINTIFF'S CLAIM FOR EMOTIONAL DISTRESS AS THE AMOUNT IN CONTROVERSY FOR THAT CLAIM IS NOT VALUED AT $75,000.

 In the event that this court does not have jurisdiction over the Plaintiff's alleged claim for business losses, as argued in issue III, then the only remaining claim would be for the Plaintiff's alleged emotional distress. If so, then the Defendant challenges the subject matter jurisdiction of this court not only on the basis of diversity (Issue I), but upon the amount in controversy.

 If this action relates solely to any alleged emotional distress sustained by the Plaintiff, as a result of being in the proximity to Felix Sabates over a three day period when he received a phone call and text messages from the defendant, then there is not a sufficient showing that this correct that that the amount in controversy is more than $75,000.  For this reason, the Defendant moves to dismiss this action on the basis that the amount in controversy does not exceed

20

$75,000, in the event that the court finds that it does not have jurisdiction over the Plaintiff's claim for alleged business loss.

VI.   IN THE ALTERNATIVE, THIS ACTION SHOULD BE
        TRANSFERRED TO THE SOUTHERN DIVISION OF FLORIDA.

In the event that any claims remain for resolution and the amount in controversy is sufficient to confer jurisdiction, then the Defendant requests that this action be transferred to the Southern District of Florida. As indicated in issue one, the Plaintiff is a citizen of the state of Florida, and therefore this court lacks subject matter jurisdiction.  If, however, the Plaintiff establishes diversity jurisdiction, then the Defendant requests that this matter be transferred to Florida.

> In considering a motion to transfer, a court should consider, among other things, the plaintiff's initial choice of forum; the residence of the parties; the relative ease of access of proof; the availability of compulsory process for attendance of witnesses; the costs of obtaining attendance of willing witnesses; the possibility of a view; the enforceability of a judgment, if obtained; the relative advantages and obstacles to  [**6]  a fair trial; other practical problems that make a trial easy, expeditious, and inexpensive; the administrative difficulties of court congestion; the interest in having localized controversies settled at home; and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action.

McDevitt & Street Co. v. Fidelity & Deposit Co. 737 F. Supp. 351, 354 (transferring action to California).

28 U.S.C. § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer on an 'individualized, case-by-case basis' of convenience and fairness to the parties." Seapray Corp. v. Mann+Hummel Filtration Tech. US LLC, 2025 U.S. Dist. LEXIS 222878, *4, 2025 LX 523734 (W.D.N.C. September 5, 2025; 3:24-CV-01075) (citations omitted; transferring action to Southern District of Florida).

21

Florida is a far more convenient forum for this action for several reasons. First, there are currently two pending companion actions pending in Florida, filed by the Plaintiff's two business partners. Several key witnesses are located in Florida. The Defendant, Dr Bolton, is a resident of Florida.  In addition, one of the business partners, Dragana, is a resident of Florida.  And Sabates lists Florida as one of his three places of residence.  The case is more efficiently litigated in Florida.  *See also* Thelen v. First Choice Pros., LLC, 2025 U.S. Dist. LEXIS 261327, *17, 2025 LX 543015, 2025 WL 3680331 (W.D.N.C. December 18, 2025; 5:25-CV-00101) ("The Western District of North Carolina has a substantial backlog of civil matters, which could delay timely adjudication of the dispute.")

CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this Court dismiss this action.  In the alternative, the Defendant requests that this action be transferred to the Southern District of Florida.

Respectfully submitted, this the 22nd day of June, 2026.

/s/ John M. Kirby
John M. Kirby
N.C. State Bar No. 20014
Law Offices of John M. Kirby, PLLC
4801 Glenwood Avenue, Suite 200
Raleigh, North Carolina 27612
Telephone: (919) 861-9050
Email: john@legal-nc.com
Counsel for Defendant Brett Bolton

22

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing Defendant's Motion for Extension of Time to File Answer with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

This the 22nd day of June, 2026.

/s/ John M. Kirby
John M. Kirby
Counsel for Defendant Brett Bolton

23

24

25